# 26-2060

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellant

v.

NEW YORK STATE BOARD OF ELECTIONS, KRISTEN ZEBROWSKI STAVISKY, in her official capacity as Co−Executive Director of the Board of Elections of the State of New York, RAYMOND J. RILEY III, in his official capacity as Co−Executive Director of the Board of Elections of the State of New York, PETER S. KOSINSKI, in his official capacity as Commissioner of the Board of Elections of the State of New York, HENRY T. BERGER, in his official capacity as Commissioner of the Board of Elections of the State of New York, ANTHONY J. CASALE, in his official capacity as Commissioner of the Board of Elections of the State of New York, ESSMA BAGNUOLA, in her official capacity as Commissioner of the Board of Elections of the State of New York, STATE OF NEW YORK,
Defendants-Appellees

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE NEW YORK STATE CONFERENCE; LEAGUE OF WOMEN VOTERS OF NEW YORK STATE,
Intervenors-Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR THE UNITED STATES AS APPELLANT

*(See inside cover for continuation of Counsel)*

*(continuation of Counsel)*

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

ANDREW G. BRANIFF
DAVID N. GOLDMAN
MICHAEL T. HAYES
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 805-7671
michael.hayes6@usdoj.gov

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. New York's SVRL is a record that Title III requires election officers to retain, preserve, and produce. .......... 2

A. Section 301 contains no exception for records that election officials compile. .......... 2

B. The SVRL came into the possession of the officers named here. .......... 8

C. List maintenance does not "alter" the SVRL under Section 302. .......... 10

D. Title III's history confirms that it reaches records that officials create. .......... 11

II. The DOJ's demand satisfied Section 303. .......... 13

A. Section 303 does not authorize a judicial inquiry into the sufficiency of the Attorney General's stated basis and purpose. .......... 13

B. The demand stated its basis. .......... 14

C. The demand stated a proper purpose. .......... 18

D. Defendants' allegations of pretext provide no basis for affirmance. .......... 24

III. Federal and state privacy laws provide no alternative ground for affirmance. .......... 26

**TABLE OF CONTENTS (continued):** **PAGE**

A. Title III preempts contrary New York law. ................. 27

B. The demand complies with the Privacy Act. ............... 28

C. The E-Government Act does not apply. ....................... 31

D. The DPPA permits the Attorney General's use. ........................................................................ 32

IV. This Court should reverse with instructions to order production. ................................................................... 33

CONCLUSION ................................................................................. 34

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**CASES:** **PAGE**

*Alabama ex rel. Gallion v. Rogers*,
187 F. Supp. 848 (M.D. Ala. 1960),
*aff'd sub nom. Dinkens v. Attorney Gen. of the U.S.*,
285 F.2d 430 (5th Cir. 1961) ........................................................ 6

*American Oversight v. United States Dep't of Just.*,
45 F.4th 579 (2d Cir. 2022) ........................................................ 30

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013) ........................................................ 27

*Berk v. Choy*,
607 U.S. 187 (2026) ........................................................ 24

*Brnovich v. Democratic Nat'l Comm.*,
594 U.S. 647 (2021) ........................................................ 20, 30

*Bryan v. United States*,
524 U.S. 184 (1998) ........................................................ 10

*Coleman v. Kennedy*,
313 F.2d 867 (5th Cir. 1963) (per curiam) ........................................ 16

*Common Cause v. United States Dep't of Just.*,
No. 1:26-cv-1352-SLS, 2026 WL 3033772
(D.D.C. Oct. 9, 2026) ........................................................ 2, 29-31

*Custis v. United States*,
511 U.S. 485 (1994) ........................................................ 19

*Department of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
601 U.S. 42 (2024) ........................................................ 22

**CASES (continued):** **PAGE**

*Department of Homeland Sec. v. League of Women Voters*,
No. 26A308, 2026 WL 2879700
(S. Ct. Sept. 25, 2026) (per curiam) .................................................25

*Donaldson v. United States*,
400 U.S. 517 (1971),
*superseded by statute on other grounds*, Tax Reform
Act of 1976, Pub. L. No. 94-455, 90 Stat.1520 ...............................13

*Fischer v. United States*,
603 U.S. 480 (2024) ..........................................................................5, 10

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ..............................................................................21

*Garcia-Bengochea v. Carnival Corp.*,
57 F.4th 916 (11th Cir. 2023)...............................................................3

*Gordon v. Softech Int'l, Inc.*,
726 F.3d 42 (2d Cir. 2013)...................................................................33

*Haber v. United States*,
823 F.3d 746 (2d Cir. 2016).................................................................26

*Honeycutt v. United States*,
581 U.S. 443 (2017) ..............................................................................3

*Kennedy v. Bruce*,
298 F.2d 860 (5th Cir. 1962) .........................................................19-20

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) .................................................... *passim*

*Kennedy v. Owen*,
321 F.2d 116 (5th Cir. 1963) (per curiam)...........................................6

**CASES (continued):** **PAGE**

*Lamie v. United States Tr.*,
540 U.S. 526 (2004) .......... 6

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 14

*Neitzke v. Williams*,
490 U.S. 319 (1989) .......... 14

*Public Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) .......... 21, 23, 28

*Richards v. Ashcroft*,
400 F.3d 125 (2d Cir. 2005) .......... 7

*Schwier v. Cox*,
340 F.3d 1284 (11th Cir. 2003) .......... 7

*SEC v. Knopfler*,
658 F.2d 25 (2d Cir. 1981) (per curiam) .......... 26, 33

*Senne v. Village of Palatine*,
695 F.3d 597 (7th Cir. 2012) (en banc) .......... 32

*Southwest Airlines Co. v. Saxon*,
596 U.S. 450 (2022) .......... 19

*Taylor v. Freeland & Kronz*,
503 U.S. 638 (1992) .......... 14

*United States v. Benson*,
179 F.4th 470, *reh'g en banc denied*,
187 F.4th 462 (6th Cir. 2026) .......... 5, 9, 17, 19

**CASES (continued):** **PAGE**

*United States v. Bormes*,
568 U.S. 6 (2012) .......... 21

*United States v. Clarke*,
573 U.S. 248 (2014) .......... 33

*United States v. Lynd*,
301 F.2d 818 (5th Cir. 1962) .......... 16

*United States v. Morton Salt Co.*,
338 U.S. 632 (1950) .......... 18, 29

*United States v. Oregon*,
828 F. Supp. 3d 1092 (D. Or. 2026),
*appeal pending*, No. 26-1231 (9th Cir.) .......... 15

*United States v. Powell*,
379 U.S. 48 (1964) .......... 13

*United States v. Raffensperger*,
No. 1:26-cv-485, 2026 WL 3002013
(N.D. Ga. Sept. 30, 2026) .......... 27-28

*United States v. Tiffany Fine Arts, Inc.*,
718 F.2d 7 (2d Cir. 1983),
*aff'd*, 469 U.S. 310 (1985) .......... 26

*United States Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) .......... 5

*Utility Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014) .......... 22

*Voter Reference Found., LLC v. Torrez*,
160 F.4th 1068 (10th Cir. 2025) .......... 11

**CASES (continued):** **PAGE**

*West Virginia v. EPA*,
597 U.S. 697 (2022) .......... 22

**STATUTES:**

Civil Rights Act of 1960
(Title VI)
52 U.S.C. 10101 .......... 19
52 U.S.C. 10101(a)(2)(C) .......... 7
(Title III)
52 U.S.C. 20701 .......... 1-2, 6, 8-9
52 U.S.C. 20702 .......... 10
52 U.S.C. 20703 .......... 1, 14, 22, 27
52 U.S.C. 20704 .......... 21, 25, 27-28
52 U.S.C. 20705 .......... 13
52 U.S.C. 20706 .......... 9
52 U.S.C. 20701-20706 .......... 13
Pub. L. No. 86-449, § 601, 74 Stat. 90 .......... 19

Civil Rights Cold Case Records Collection Act of 2018
44 U.S.C. 2107 note .......... 4
Pub. L. No. 115-426, § 2(3)(B), 132 Stat. 5489 (2019) .......... 4

Driver's Privacy Protection Act
18 U.S.C. 2721(b)(1) .......... 32

E-Government Act of 2002
44 U.S.C. 3502(1) .......... 31
44 U.S.C. 3502(3)(A)(i) .......... 31

Help America Vote Act of 2002
52 U.S.C. 21083(a)(4) .......... 23
52 U.S.C. 21083(a)(5)(A)(i) .......... 27

**STATUTES (continued):** **PAGE**

National Voter Registration Act of 1993
52 U.S.C. 20501(a)(1) ....20
52 U.S.C. 20501(a)(3) ....20
52 U.S.C. 20507(i)(1) ....21

Privacy Act of 1974
5 U.S.C. 552a(e)(7) ....29

18 U.S.C. 663 ....4

26 U.S.C. 7602(a)(1) (1954 ed.) ....13

38 U.S.C. 8303 ....4

44 U.S.C. 3518(c)(2) ....32

46 U.S.C. 10705 ....4

N.Y. Elec. Law § 5-102(1) ....24

O.C.G.A. § 21-2-225(b) ....27

**REGULATIONS:**

28 C.F.R. 0.50 ....30

28 C.F.R. 0.50(a) ....30

28 C.F.R. 0.51 ....30

68 Fed. Reg. 47,611 (Aug. 11, 2003) ....30

**LEGISLATIVE HISTORY:**

106 Cong. Rec. 6392 (1960) ....15, 19

**RULES:** **PAGE**

Fed. R. App. P. 2 .......... 34

Fed. R. App. P. 40(d)(1) .......... 34

Fed. R. App. P. 41(b) .......... 34

Fed. R. Civ. P. 12(d) .......... 24

**MISCELLANEOUS:**

Authority to Obtain and Share Statewide Voter Roll Data,
50 Op. O.L.C. (May 12, 2026),
https://www.justice.gov/olc/media/1440346/dl .......... 31-32

*Black's Law Dictionary* (12th ed. 2024) .......... 4

Report of the United States Commission on Civil Rights
(1959), https://www.usccr.gov/files/historical/1959/
59-001-U.pdf .......... 11-12, 28

*Webster's New World Dictionary of the American Language* (8th coll. ed. 1960) .......... 3, 14-15

*Webster's Seventh New Collegiate Dictionary* (1963) .......... 14

## INTRODUCTION

Title III requires "[e]very officer of election" to "retain and preserve" for 22 months "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. 20701. Those records must be made available upon the Attorney General's written demand. 52 U.S.C. 20703. New York's statewide voter registration list (SVRL) is the State's official record of every voter registration. It came into the possession of the election officers who hold it. And the demand from the Department of Justice (DOJ) told those officers what the Attorney General wanted, under what authority, and why: "to ascertain New York's compliance with the list maintenance requirements of the NVRA and HAVA." JA Vol. I at 93.[1] None of defendants' arguments supports the district court's contrary conclusion. The Board of Elections of the State of New York

[1] "U.S. Br. __" refers to the United States' opening brief. "State Br. __" refers to the brief of the State of New York. "Stavisky Br. __" refers to the brief of Co-Executive Director Stavisky and Commissioners Berger and Bagnuola (the Democratic Commissioners). "Riley Br. __" refers to the brief of Co-Executive Director Riley and Commissioners Kosinski and Casale (the Republican Commissioners). "NAACP Br. __" and "LWV Br. __" refer to the briefs of the intervenors. "Defendants" refers collectively to all appellees other than the Republican Commissioners.

(Board) itself is divided: half the officials sued "do not oppose the relief sought," recognizing that "Title III requires production of the entire unredacted list." Riley Br. 1, 7. This Court should reverse.[2]

## ARGUMENT

### I. New York's SVRL is a record that Title III requires election officers to retain, preserve, and produce.

#### A. Section 301 contains no exception for records that election officials compile.

No defendant disputes that the SVRL "relat[es] to" voter registration. 52 U.S.C. 20701; *see* State Br. 28; NAACP Br. 31-32; LWV Br. 40-41. The dispute instead turns on whether the words "come into his possession" exclude any record that an election official compiles rather than receives from an outside source. State Br. 28-30; Stavisky Br. 18-19; NAACP Br. 22-24; LWV Br. 40-42. They do not.

---

[2] A district court has "set[] aside and vacate[d] DOJ's" so-called "Voter List Maintenance Policy." *Common Cause v. United States Dep't of Just.*, No. 1:26-cv-1352-SLS, 2026 WL 3033772, at *36 (D.D.C. Oct. 9, 2026). The DOJ "has appealed [this] decision" and sought "a stay of th[e] decision pending appeal." Doc. 57, at 2 (No. 1:26-cv-1352-SLS). The "DOJ does not interpret [that] decision as pretermitting or requiring dismissal of ongoing" appeals, including this one, related to "obtain[ing] voter rolls." *Id.* at 13.

1. The phrase does not narrow Section 301's coverage. To come into possession of is to acquire—the phrase "broadly encompasses possession by any means." *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 933 (11th Cir. 2023) (Jordan, J., concurring) (citation omitted). Contemporaneous dictionaries defined "acquire" as "to get or gain by one's own efforts or actions." *Webster's New World Dictionary of the American Language* 13 (8th coll. ed. 1960) (*Webster's New World*). Defendants' own sources agree. The State's dictionary defines "acquire" as coming into possession "by some uncertain or unspecified means," and its authority defines "obtain" as coming into possession "by one's own effort." State Br. 29 (citing *Honeycutt v. United States*, 581 U.S. 443, 449 (2017)). An officer who assembles a list through his own effort thus "comes into possession" of it.

Defendants' analogies do not show otherwise. It may sound odd to say that a baker "came into possession" of a cake she baked. State Br. 29-30; NAACP Br. 23-24; LWV Br. 41. But that is only because English offers more a precise verb for that scenario. Asked how a cake came into her possession, a baker would answer "I baked it"—not "it didn't." Congress, drafting a retention duty meant to capture voting records however they

arrived, used the general phrase rather than a list of specific verbs. And the State explains how the SVRL comes into the Board's possession: by combining lists that local boards provide. State Br. 16.

2. Defendants' statutory examples fare no better. State Br. 31 & n.11; NAACP Br. 34-35. In none of them does the phrase itself impose an external-source limitation; any such limitation comes from the statutes' subject matter. Property "donated by the owner thereof for the use of the United States" necessarily comes from a donor. 18 U.S.C. 663. So do the "proceeds" of a gift. 38 U.S.C. 8303. And a deceased seaman's property belonged to the seaman before it came into a consular officer's possession. 46 U.S.C. 10705.

The Civil Rights Cold Case Records Collection Act of 2018 confirms the point. It reaches records that were "created or made available for use by, obtained by, or *otherwise* came into the possession of" an agency. Pub. L. No. 115-426, § 2(3)(B), 132 Stat. 5489 (2019) (44 U.S.C. 2107 note) (emphasis added). The word "otherwise" marks creation and receipt as two ways of coming into possession. *See* Otherwise, *Black's Law Dictionary* (12th ed. 2024) (defining "otherwise" as "[b]y other causes or means" or "in another manner"). *Contra* State Br. 33; NAACP Br. 35 n.11.

Creation is thus one species of coming into possession. *See Fischer v. United States*, 603 U.S. 480, 487, 491 (2024) ("'Otherwise' can link a set of examples to a general phrase and give it more definite meaning.") (emphasis omitted).

The Supreme Court likewise described agency records that an agency "either create[s] or obtain[s]" as materials that "have come into the agency's possession." *United States Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144-145 (1989). Defendants dismiss that language as dicta. State Br. 33-34; NAACP Br. 32-33; LWV Br. 42-43. Dicta or not, it is still instructive. The Court used the phrase in its ordinary sense, signifying "official custody regardless of whether the records were created within or received from outside the agency." *United States v. Benson*, 187 F.4th 462, 471 (6th Cir. 2026) (*Benson III*) (Griffin, J., dissenting from denial of reh'g en banc).

3. The United States' reading does not render "come into" surplusage. *Contra* Stavisky Br. 28-29; NAACP Br. 27-28. The phrase has temporal significance: it fixes when, and to whom, the retention duty attaches. Without it, the duty might be read to begin only on Election

Day or to exclude records acquired afterward. The 22-month clause answers a different question: how long the duty lasts after the election.

Moreover, that Congress could have used other words, such as "in the possession of," does not make the words it chose any less plain. *See Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004). And the Fifth Circuit drew no distinction based on a record's origin when it ordered production of all covered records "in the possession, custody or control" of election officials. *Kennedy v. Owen*, 321 F.2d 116, 117 (5th Cir. 1963) (per curiam). That the court did not compare the two phrasings (Stavisky Br. 26-27; LWV Br. 42) suggests that contemporaneous courts saw no difference between them. *See Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855 (M.D. Ala. 1960) ("There is nothing uncertain about that part of the Act requiring the preservation and production of all records and papers which are in the possession of an election official."), *aff'd sub nom. Dinkens v. Attorney Gen. of the U.S.*, 285 F.2d 430 (5th Cir. 1961).

4. Defendants stress that Section 301's examples—applications, registrations, poll-tax payments—are documents that voters submit. State Br. 30; NAACP Br. 24-25. But Section 301 reaches "all records and papers . . . relating to" those items. 52 U.S.C. 20701. The phrase "relating

to" should be read "expansively." *Richards v. Ashcroft*, 400 F.3d 125, 129 (2d Cir. 2005) (citation omitted). It is defendants' reading—which conflates "records and papers" with the items to which they relate—that reads "relating to" out of the statute.

Similarly, the materiality provision of the Civil Rights Act of 1964 (NAACP Br. 28-29) does not restrict the scope of Title III, and *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003), did not suggest otherwise by describing that provision's aim. Indeed, the next subparagraph entitles an applicant to "a certified copy of the test and of the answers given" upon a "request made within the period of time during which records and papers are required to be retained and preserved pursuant to title III." 52 U.S.C. 10101(a)(2)(C). That requirement presupposes that officials retain the literacy tests they create. Congress wrote a "sweeping" retention provision, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) (*Lynd II*), because officials' own records—literacy tests and voucher indices, for example—were often the best evidence of how they treated voters. *See* Part I.D, *infra*.

### B. The SVRL came into the possession of the officers named here.

Defendants' argument fails on its own terms. The State says that local changes are "automatically reflected on the statewide list." State Br. 17. Thus the Board *receives* an up-to-date SVRL from elsewhere whenever such updates are made. The State's claim that the Board alone creates the SVRL, State Br. 16, at most raises factual questions unfit for Rule 12(b)(6) disposition—and only if the statute contains an external-source limitation.

The State responds that New York designated the Board as the SVRL's custodian, so the retention duty "devolve[s]" on the Board alone. State Br. 35-36 (quoting 52 U.S.C. 20701); *see* LWV Br. 51-52. But who bears the duty to retain a record says nothing about whether the record is covered and subject to inspection. Section 301 permits a State to designate a custodian "to retain and preserve these records and papers"—that is, records that came into the possession of an "officer of election." 52 U.S.C. 20701. And an "officer of election" includes any person who "performs or is authorized to perform any function . . . in connection with any application, registration, payment of poll tax, or other act requisite

to voting." 52 U.S.C. 20706. The existence of a designated custodian is thus irrelevant.

Defendants also contend that Title III imposes no duty on individual officeholders because the Board itself creates and holds the SVRL, and an official-capacity suit concerns the office, not the officeholder. LWV Br. 50-52; State Br. 16, 27-28. But even if the Board alone created the list, its officers still come into possession of it. Section 301 places the retention duty on individuals: it reaches records that come into "his possession," and it subjects "[a]ny officer of election or custodian" who willfully fails to comply to imprisonment. 52 U.S.C. 20701. Only an individual can be imprisoned. And whatever Judge Murphy's view of the distance between the panel and the dissent in *United States v. Benson*, 179 F.4th 470 (6th Cir. 2026) (*Benson II*), he explicitly recognized that "[a]t the least, the Secretary of State 'came into possession' of the voter-registration list when she assumed office in 2019." *Benson III*, 187 F.4th at 465 (Murphy, J., concurring in denial of reh'g en banc); *contra* LWV Br. 52-53. That reading does not multiply the retention duty. *Contra* LWV Br. 51 n.14. A new officer simply assumes the office's existing duty to keep the list. *See Lynd II*, 306 F.2d at 230.

### C. List maintenance does not "alter" the SVRL under Section 302.

Defendants contend that treating the SVRL as a Section 301 record would make every HAVA-required update a crime. State Br. 37-39; Stavisky Br. 20-23; NAACP Br. 29-31, 39-40; LWV Br. 43-45. They are mistaken.

Section 302 reaches one who "willfully steals, destroys, conceals, mutilates, or alters" a covered record. 52 U.S.C. 20702. "[A]lter" takes its meaning from those neighboring verbs, which describe "actions that, by their nature, impair the integrity or availability of records, documents, or objects." *Fischer*, 603 U.S. at 490.[3] Keeping the list accurate, as federal law commands, preserves its integrity. And Section 302 reaches only "willful[]" conduct. 52 U.S.C. 20702. An official who updates the list because HAVA and the NVRA require it does not act with a "bad purpose." *Bryan v. United States*, 524 U.S. 184, 191 (1998).

---

[3] The NAACP notes that the statute in *Fischer* also required an intent to impair. NAACP Br. 39-40. But *Fischer* described the verbs themselves as actions that "by their nature" impair a record's integrity. 603 U.S. at 490. The mens rea requirement imposes an additional burden on the prosecution of proving intent.

Defendants are right that the SVRL is a "dynamic" database. State Br. 37. But that undercuts their Section 302 argument. The SVRL is New York's official, current record of its registered voters. Officials who update it to reflect new information maintain that record; they do not "alter[]" it. *See Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1084-1085 (10th Cir. 2025) (recognizing that a "constantly changing" record can be "maintain[ed]" under the NVRA); U.S. Br. 33 n.7. Just as a county recorder who notes liens, purchases, and encumbrances keeps the land records current without unlawfully altering them, so too may an SVRL custodian maintain the list without fear of prosecution.

**D. Title III's history confirms that it reaches records that officials create.**

Defendants' historical argument also fails. Stavisky Br. 23-26; NAACP Br. 36-37; LWV Br. 47-49. The Commission on Civil Rights relied on officials' own records, such as voter lists and voucher indices. Report of the United States Commission on Civil Rights at 75, 89, 93 (1959) (1959 CCR Report), https://www.usccr.gov/files/historical/1959/59-001-U.pdf. That the Commission already had some voucher indices (Stavisky Br. 26) shows only that such records were relevant to its investigation. The Commission then recommended preservation of "*all* State

registration and voting records." 1959 CCR Report at 138 (emphasis added). And defendants never explain how applications alone could reveal discrimination without officials' own records showing which were accepted or rejected.

Defendants' claim that voter lists were "already available" (Stavisky Br. 25; NAACP Br. 36-37) proves nothing. Congress acted because "lack of uniform provision for the preservation and public inspection of all records pertaining to registration and voting hamper[ed] and impede[d]" federal investigations. 1959 CCR Report at 137. And the claim that Title III has lain "dormant since the 1960s" (Stavisky Br. 6; *see id.* at 1-2) is refuted by the record before this Court. In 2006, the United States sued Georgia under Title III for its statewide voter registration list, including Social Security numbers, to assess the State's compliance with the NVRA's list-maintenance provisions. JA Vol. I at 113-117. Georgia consented to a decree requiring production of the full list with those identifiers. JA Vol. I at 119-125. Two years later, Texas agreed to produce its list on the same basis. JA Vol. I at 110-111. The history thus cuts the other way. Congress wanted broad access to evidence of voting discrimination, whatever its source.

## II. The DOJ's demand satisfied Section 303.

### A. Section 303 does not authorize a judicial inquiry into the sufficiency of the Attorney General's stated basis and purpose.

Defendants argue that *United States v. Powell*, 379 U.S. 48 (1964), requires the full application of the Federal Rules of Civil Procedure. State Br. 24-26; Stavisky Br. 12-15; NAACP Br. 18-22; LWV Br. 11-16. But *Powell* rested on the Internal Revenue Code's prohibition of "unnecessary examination or investigations," 379 U.S. at 52-53 (citation omitted), and its limitation to records that "may be relevant or material," 26 U.S.C. 7602(a)(1) (1954 ed.). Title III has no analogue. *See* 52 U.S.C. 20701-20706. Even when the Rules apply, they are "not inflexible" and should not "impair a summary enforcement proceeding." *Donaldson v. United States*, 400 U.S. 517, 528-529 (1971), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat.1520. And Rule 81(a)(5) yields where a statute provides otherwise, as Title III does by calling only for "appropriate process." 52 U.S.C. 20705. *Contra* State Br. 26.

In any event, Section 303 itself sets out everything required to state a claim. "All that is required is a simple statement by the Attorney

General that after a [Section 303] written demand," the custodian "has failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) (*Lynd II*). Nor did the United States concede the point. *Contra* NAACP Br. 19-20. The district court dismissed under Rule 12(b)(6), JA Vol. II at 445, and the United States explained why the dismissal fails under that standard as well. U.S. Br. 13-14, 51-52.

**B. The demand stated its basis.**

1. Section 303 requires "a statement of the basis and the purpose therefor." 52 U.S.C. 20703. It does not say "factual basis." Defendants' own definition—"chief supporting factor"—says nothing about whether a "factor" must be factual. State Br. 41. Rather, "basis" is defined as "the basic principle or theory." *Webster's New World* 122; *see also Webster's Seventh New Collegiate Dictionary* 72 (1963) (defining "basis" as "the basic principle"). A "principle" is not a "fact."

Courts routinely recognize legal, as opposed to factual, bases. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 641 (1992) (citation omitted) ("no statutory basis"); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 389 (2024) (citation omitted) ("reasonable basis in law"); *Neitzke v.*

*Williams*, 490 U.S. 319, 325 (1989) ("arguable basis either in law or in fact"). The district court did not seriously engage with this possibility, relying instead on a court that found legal authority to be "nothing more than a component of the purpose." JA Vol. II at 447 (citing *United States v. Oregon*, 828 F. Supp. 3d 1092, 1104 (D. Or. 2026), *appeal pending*, No. 26-1231 (9th Cir. oral argument held May 19, 2026)); *see Oregon*, 828 F. Supp. 3d at 1104.

The United States' proposed reading does not render "basis" surplusage. State Br. 44; LWV Br. 20-21. The two terms are related but distinct: a request's purpose is its aim, and its basis is the principle that justifies it. *See Webster's New World* 122, 1182.

The drafting history confirms this reading. The provision's author explained that it gave the custodian notice "as to why such an inspection was being made" (*i.e.*, "purpose") and "as to what law or what constitutional provision, right, or immunity might be involved" (*i.e.*, "basis"). 106 Cong. Rec. 6392 (1960) (statement of Rep. Cramer).

The letters therefore supplied the basis: Congress has imposed federally enforceable list-maintenance obligations on New York under the NVRA and HAVA. *See* JA Vol. I at 85 (stating that HAVA "establishes

minimum standards for states"), 92-93 (invoking the NVRA's and HAVA's list-maintenance requirements). Those obligations exist whether or not any request is made. The request's purpose was to assess New York's compliance with them. JA Vol. I at 93.

2. The early Title III decisions refute defendants' factual-predicate rule. State Br. 42; Stavisky Br. 41-42; LWV Br. 18-22. The Attorney General need only "identify in a general way the reasons for his demand," and "[n]o showing even of a prima facie case of a violation of Federal law need be made." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (citation omitted). There is "no justification" for requiring the United States to "allege specific details." *United States v. Lynd*, 301 F.2d 818, 821 (5th Cir. 1962) (*Lynd I*). The 1960s demands on which defendants rely recited only that they were "based upon information in the possession of the Attorney General tending to show" discrimination—without disclosing any of that information. *See, e.g.*, *Lynd II*, 306 F.2d at 229 n.6. And *Lynd II*, in which the Attorney General did not disclose the factual basis, held that "the factual foundation for, or the sufficiency of," the statement of basis "is not open to judicial review or ascertainment."

*Id.* at 226. That holding does not presuppose a factual-predicate requirement. *Contra* State Br. 42.

3. Even if a factual basis was required, the demand supplied one.[4] Together, the two letters sent to the Board identified the specific list-maintenance functions under review. JA Vol. I at 85-86. They explained that HAVA requires each registration to include a driver's license number or the last four digits of a Social Security number. JA Vol. I at 92.

Defendants object to an investigation of NVRA and HAVA compliance undertaken without particularized evidence of a violation. But federal agencies may "investigate merely on suspicion that the law is being violated, or even just because [they] want[] assurance that it is

[4] The State says that the United States relies only on the August 14 letter and has thus conceded that the June 30 letter stated no basis or purpose. State Br. 40. Not so. The August 14 letter expressly sought to "clarify" the June 30 request (JA Vol. I at 92), and the Complaint alleges that both letters requested the SVRL (JA Vol. I at 36). Title III does not require that the demand appear in a single document. *United States v. Benson*, 187 F.4th 462, 475 (6th Cir. 2026) (*Benson III*) (Griffin, J., dissenting from denial of reh'g en banc).

not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950). Section 303 does not displace that principle. *Contra* State Br. 45.[5]

**C. The demand stated a proper purpose.**

1. Defendants cannot agree on what purpose Title III supposedly requires. The Democratic Commissioners say a demand must advance the "anti-discrimination objectives of the 1957" Civil Rights Act. Stavisky Br. 34. The NAACP says it must relate to "the denial of the right to vote and violations of civil rights laws." NAACP Br. 45. The League says it must relate to "violations of individuals' voting rights." LWV Br. 23. Title III contains none of these limits. And *Lynd II* called investigating denials of voting rights "one of the clearest purposes" of Title III—not the only one. 306 F.2d at 228.

Where Congress meant to cabin a CRA remedy to a particular harm, it said so. Title VI of the same Act applies only to violations of

[5] The Democratic Commissioners observe that the United States' letters to other States cited survey data. Stavisky Br. 42. That the Attorney General sometimes includes more than Section 303 requires does not transform the additional detail into a statutory element. The demands in *Lynd II* did not detail any of the information in the Attorney General's possession "tending to show that distinctions on the basis of race or color have been made." 306 F.2d at 229 n.6. What the Attorney General chooses to do in a particular case does not limit the scope of Title III.

rights "on account of race or color." Pub. L. No. 86-449, § 601, 74 Stat. 90 (52 U.S.C. 10101); *see* U.S. Br. 45-46. The "omission of similar language" from Title III "indicates that [Congress] did not intend" the same limitation. *Custis v. United States*, 511 U.S. 485, 492 (1994). "[N]othing in the statute's text . . . limits the purposes for which the DOJ may request the records." *United States v. Benson*, 187 F.4th 462, 467 (6th Cir. 2026) (*Benson III*) (Murphy, J., concurring in denial of reh'g en banc). And courts "have no warrant to elevate vague invocations of statutory purpose over the words Congress chose." *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 463 (2022).

The legislative history does not help defendants either. NAACP Br. 46-47. The NAACP quotes Representative Cramer on Title III's purpose, but he denied that Title III was "limited to [enforcing] the 1957 act." 106 Cong. Rec. 6392 (1960) (statement of Rep. Cramer). Nor does *Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962), place list-maintenance failures beyond Title III's reach. Stavisky Br. 35; NAACP Br. 51. The court noted in a footnote that a 112.4% white registration rate "[o]bviously" reflected "failures to purge voters who ha[d] moved away or ha[d] died," but that this was of no "particular importance to the present inquiry" into the 0%

registration of black citizens. *Bruce*, 298 F.2d at 863 & n.2. *Bruce*, which predates the NVRA and HAVA, says nothing about whether Title III reaches failures to perform the list maintenance that federal law now requires.

2. In any event, the stated purpose for the demand is appropriate. Congress enacted the NVRA because "the right of citizens of the United States to vote is a fundamental right," and because "discriminatory and unfair registration laws and procedures" harm voter participation, particularly by racial minorities. 52 U.S.C. 20501(a)(1), (3). HAVA's list-maintenance requirements ensure that eligible voters are not turned away at the polls, and that their voices are not diluted by fraudulent voting. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021) (explaining that fraudulent voting "dilute[s] the right of citizens to cast ballots that carry appropriate weight"). The NAACP contends that this argument is new on appeal. NAACP Br. 51. But the demand invoked those statutes from the start. JA Vol. I at 92-93. An inquiry into compliance with the NVRA and HAVA necessarily serves to vindicate the rights those statutes protect. *See* U.S. Br. 49-50.

3. Defendants next argue that the NVRA's and HAVA's enforcement schemes foreclose using Title III for the United States' stated purpose. State Br. 48-49; Stavisky Br. 35-37; NAACP Br. 50-51; LWV Br. 27-30. But neither statute addresses the Attorney General's access to records. Defendants read that silence to bar inspection outside the NVRA's public-disclosure provision. The better inference is that Congress gave the Attorney General no new inspection power in those statutes because Title III already provided it. And the NVRA has been read to permit redaction because its disclosure provision governs *public* inspection. 52 U.S.C. 20507(i)(1); *see Public Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (*PILF*). Title III is not so limited; indeed, it ensures the confidentiality of inspected records. 52 U.S.C. 20704.

The later statutes therefore do not narrow Section 303. The State cites *United States v. Bormes*, 568 U.S. 6, 13 (2012), and *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000), for the proposition that specific remedial schemes in later statutes displace older, more general ones. State Br. 48-49. But neither the NVRA nor HAVA authorizes the Attorney General, specifically, to inspect

records, and Title III does. The statutes thus "can coexist harmoniously." *Department of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63-64 (2024) (citation omitted).

Relatedly, defendants' major-questions argument (Stavisky Br. 33; NAACP Br. 48-49) fails. Title III expressly authorizes demands for "[a]ny record or paper" covered by Section 301, 52 U.S.C. 20703. The major-questions doctrine concerns an agency's claimed "expansion in [its] regulatory authority," not the Executive Branch's investigative power under a concededly valid statute. *Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014); *see West Virginia v. EPA*, 597 U.S. 697, 724 (2022). Nor is the authority asserted here novel. *Compare West Virginia*, 597 U.S. at 724 (assessing an agency's "newfound" power), *with* JA Vol. I at 110-111, 113-125 (detailing prior uses of Title III to demand SVRLs to investigate list-maintenance compliance).

4. Defendants also argue that the SVRL would not help the Attorney General assess compliance, because the NVRA and HAVA require only a "reasonable effort" to ensure list accuracy. Stavisky Br. 38-40; NAACP Br. 44; LWV Br. 30-31. First, Title III has no relevance requirement. Congress itself identified the covered records. *Lynd II*, 306

F.2d at 226. Second, even if relevance mattered, the SVRL itself is the best evidence of whether New York maintains it properly. "[W]hether voter registration rolls are accurate and current cannot be determined without inspecting the Voter File." *PILF*, 92 F.4th at 49.

The Board's written descriptions of its procedures (JA Vol. I at 96-99) tell the Attorney General what New York says it does, but its say-so is not conclusive. Moreover, New York's own duplicate-detection system matches registrants by their driver's license number or the last four digits of their Social Security number. JA Vol. I at 97. The Attorney General cannot evaluate that system—or rely on the redacted list available to the public (LWV Br. 56-57)—without the same identifiers. JA Vol. I at 34-35.

The State argues that its obligations under the NVRA and HAVA "do not include the obligation to verify citizenship, as citizenship status is not an enumerated ground for removing a voter under a list-maintenance program." State Br. 46-47. But HAVA requires a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote," not only those who have died or moved. 52 U.S.C. 21083(a)(4); *see* U.S. Br. 65. The June 30 letter asked how New

York identifies and removes noncitizen registrants (JA Vol. I at 86), and the Board responded that "New York law requires removal of voters from the voter rolls who are not eligible to vote for any statutory reason" (JA Vol. I at 98). *See* N.Y. Elec. Law § 5-102(1) ("No person shall be qualified to register for and vote at any election unless he is a citizen of the United States."). The NVRA and HAVA impose list-maintenance requirements, and Title III permits inspection of the list to ensure those requirements are fulfilled.

### D. Defendants' allegations of pretext provide no basis for affirmance.

Defendants cite executive orders, an Office of Legal Counsel (OLC) opinion, news reports, and statements in other cases as evidence of pretext. State Br. 4-7, 45-47; Stavisky Br. 40 n.8; NAACP Br. 11-13; LWV Br. 33-39. The district court correctly declined to weigh that material. It explained that the United States' motivations were "not dispositive" on a Rule 12(b)(6) motion, which turns on "the allegations in [the] complaint, taken as true." JA Vol. II at 447 n.7. At that stage, the court "cannot consider 'matters outside the pleadings.'" *Berk v. Choy*, 607 U.S. 187, 193 (2026) (quoting Fed. R. Civ. P. 12(d)). The Complaint alleges that the

demand's purpose is to assess compliance with federal law. JA Vol. I at 25-26, 34-35.

Moreover, defendants' materials neither establish pretext nor satisfy their burden to resist enforcement. *See* U.S. Br. 51-53. The State says that pretext is "conclusively established" by Executive Order No. 14,248 and the OLC opinion, which the State reads as tying the demand to that order. State Br. 47. But the order directs the Attorney General to prioritize enforcement of laws that bar noncitizens from registering and voting. State Br. 4. Assessing whether New York removes ineligible registrants, as HAVA requires, serves that directive without contradicting the stated purpose. So does the United States' acknowledged plan to check the list against the Department of Homeland Security's SAVE database. LWV Br. 34. Checking registrants' eligibility is one way to test whether ineligible registrants have been removed. *See Department of Homeland Sec. v. League of Women Voters*, No. 26A308, 2026 WL 2879700, at *1 (S. Ct. Sept. 25, 2026) (per curiam). Defendants also suggest that the list will be shared with other agencies. LWV Br. 33-35. Title III permits such sharing, 52 U.S.C. 20704, and defendants offer nothing to suggest that any sharing would serve a different purpose. Nor

do other agencies' data initiatives (LWV Br. 35-37) bear on this demand; defendants do not tie any of them to it. Speculation of that kind is not the "meaningful and substantial factual showing" needed to warrant further inquiry. *SEC v. Knopfler*, 658 F.2d 25, 26 (2d Cir. 1981) (per curiam); *see also Haber v. United States*, 823 F.3d 746, 755 (2d Cir. 2016) (rejecting as "speculation" a theory that a summons's stated purpose was pretextual).[6]

## III. Federal and state privacy laws provide no alternative ground for affirmance.

The privacy laws that defendants invoke govern the United States' collection and use of information. They do not relieve New York of its independent duty under Title III. U.S. Br. 53-54. The Democratic Commissioners contend that this point is new on appeal. Stavisky Br. 46 n.11. But the district court did not reach defendants' privacy arguments, JA Vol. II at 458 n.12, and the United States may respond to them on

[6] Relatedly, defendants have not shown that lawfully obtained information cannot be put to more than one use. *See United States v. Tiffany Fine Arts, Inc.*, 718 F.2d 7, 13 (2d Cir. 1983), *aff'd*, 469 U.S. 310 (1985) ("[N]umerous courts have held that an IRS summons issued primarily to obtain research data is enforceable as long as it is also supported by a civil tax determination purpose.").

appeal, as defendants press them as alternative grounds for affirmance. Each argument fails.

### A. Title III preempts contrary New York law.

Defendants argue that nothing in Title III "specifically" requires production of sensitive information. State Br. 58-59; Stavisky Br. 43-45; NAACP Br. 52-53; LWV Br. 53-54. But Section 303 requires that "[a]ny record or paper" covered by Section 301 "shall" be made available. 52 U.S.C. 20703. That text reaches the SVRL as it exists—including the identifiers HAVA requires it to contain. 52 U.S.C. 21083(a)(5)(A)(i). A state law forbidding production of part of a covered record conflicts with that command and must yield. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15 (2013). And Section 304's confidentiality protections presuppose that Section 303 reaches sensitive information. 52 U.S.C. 20704.

The State's Rule 28(j) letter (C.A. Doc. 86) cites *United States v. Raffensperger*, No. 1:26-cv-485, 2026 WL 3002013 (N.D. Ga. Sept. 30, 2026). That decision does not help defendants. It construed a Georgia statute, not New York law. And it was wrongly decided. The Georgia statute, O.C.G.A. § 21-2-225(b), governs public disclosure: it excepts

certain sensitive identifiers from public inspection. *Raffensperger*, 2026 WL 3002013, at *5. It says nothing about a demand by the Attorney General, who may not disclose Title III records except to Congress, governmental agencies, or a court. 52 U.S.C. 20704.[7]

*Raffensperger* thus read into Title III an exception for whatever state law shields from public view. Under that reading, the States whose legislatures authorized the destruction of registration applications (1959 CCR Report at 137) could have evaded Sections 301 and 303 simply by declaring the records' key contents—such as applicants' race—confidential. Congress wrote no such exception.

### B. The demand complies with the Privacy Act.

The United States agreed not to object to redaction of party affiliation and how an individual votes because that information

---

[7] *Raffensperger* also relied on *Lynd*'s reference to "public records." *Raffensperger*, 2026 WL 3002013, at *7; *see* NAACP Br. 52. But that passage described the records in that case, not the limits of the statute. *Kennedy v. Lynd*, 306 F.2d 222, 230-231 (5th Cir. 1962) (*Lynd II*). *Raffensperger*'s reliance on NVRA public-inspection cases is likewise misplaced. *Raffensperger*, 2026 WL 3002013, at *8; *see* LWV Br. 54, 56. Redaction under the NVRA protects voters from disclosure to the world. *Public Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024). Title III permits inspection only by the Attorney General, who may not disclose the records except as Section 304 allows. 52 U.S.C. 20704.

describes "how" a voter exercises First Amendment rights. U.S. Br. 55. That concession does not "substantiate" defendants' objections. Stavisky Br. 48. It reflects the statute's line between how a person exercises those rights and whether he registered, and the United States' judgment that party affiliation and candidate choices are not "pertinent to" its investigation. 5 U.S.C. 552a(e)(7). The remaining fields—name, address, date of birth, and HAVA identifiers—do not describe "how any individual exercises rights guaranteed by the First Amendment." *Ibid.* And the SVRL is "pertinent to and within the scope of an authorized law enforcement activity." *Ibid.*[8]

Defendants contend that no System of Records Notice (SORN) covers the list. State Br. 52-53; Stavisky Br. 48-50; NAACP Br. 53-56.

---

[8] The *Common Cause* court rejected this argument, claiming that the DOJ's current efforts are "little more than 'generic investigative . . . purposes,'" which it found insufficient to satisfy the "authorized law enforcement activity" exception. *Common Cause v. United States Dep't of Just.*, No. 1:26-cv-1352-SLS, 2026 WL 3033772, at *34 (D.D.C. Oct. 9, 2026) (citation omitted). But the court's holding is wrong; the DOJ need not articulate a "specific reason to believe" a "state violated the NVRA or HAVA" for the exception to apply. *Ibid.*; *see United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950) (federal agencies may "investigate merely on suspicion that the law is being violated, or even just because [they] want[] assurance that it is not").

But the existing SORN suffices. It covers "case files" and "matters" relating to the Civil Rights Division's duties under 28 C.F.R. 0.50, 0.51. 68 Fed. Reg. 47,611 (Aug. 11, 2003). And Section 0.50(a) includes "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to elections and voting." 28 C.F.R. 0.50(a). Both the SORN and the regulation were published in the Federal Register. *Contra* NAACP Br. 54-55. The SORN also covers "[s]ubjects of investigations" and "victims." 68 Fed. Reg. at 47,611. A "subject" is not a "target" against whom there is substantial evidence of wrongdoing. *American Oversight v. United States Dep't of Just.*, 45 F.4th 579, 582 n.2 (2d Cir. 2022). And eligible voters whose ballots may be diluted by invalid registrations are potential "victims" of noncompliance.[9] *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021). The NAACP's claim that courts may

---

[9] The *Common Cause* court construed the term "subject" narrowly, focusing on a single example of the term's meaning. *Common Cause*, 2026 WL 3033772, at *29. But a single example does not exhaust all possible meanings of a term. And even if the SORN required proof that someone "is *in fact* a 'victim[],'" as the *Common Cause* court held, *Brnovich* recognizes how unlawful vote dilution harms lawfully registered voters. *Ibid.* (emphasis added); *Brnovich*, 594 U.S. at 672.

not order unlawful conduct (NAACP Br. 56) therefore assumes a violation that does not exist.

### C. The E-Government Act does not apply.

The State and the Democratic Commissioners contend that a privacy impact assessment was required because identical questions "have been posed" to voters on registration forms. State Br. 56; Stavisky Br. 51. But the Act defines a "collection of information" as obtaining information "by or for [a federal] agency" through "identical questions posed to . . . ten or more persons." 44 U.S.C. 3502(1), (3)(A)(i). New York posed the questions on its own registration forms, not "for" the DOJ. And a demand that a State produce a record it already keeps—whether made of one State or many—neither poses "identical questions" nor imposes "identical reporting or recordkeeping requirements." 44 U.S.C. 3502(3)(A)(i); *see* U.S. Br. 58.[10]

---

[10] Again, the *Common Cause* court erred, holding that the DOJ imposed an identical reporting requirement on each State. *Common Cause*, 2026 WL 3033772, at *35. The letters varied by each State, and requested different information. Moreover, demanding a copy of a preexisting document does not impose a "reporting requirement." Authority to Obtain and Share Statewide Voter Roll Data, 50 Op. O.L.C. (May 12, 2026) (slip op. at 31), https://www.justice.gov/olc/media/1440346/dl.

Nor is this a "general investigation[]" of a "category of individuals or entities." State Br. 57 (quoting 44 U.S.C. 3518(c)(2)); Stavisky Br. 51. That provision refers to an investigation of a group as a group, not an investigation of a particular State's compliance with federal law. Authority to Obtain and Share Statewide Voter Roll Data, 50 Op. O.L.C. (May 12, 2026) (slip op. at 33), https://www.justice.gov/olc/media/1440346/dl. An investigation that targets "specific individuals or entities" does not become any less specific simply because, as here, its targets are numerous. And requesting a list that New York already maintains under preexisting recordkeeping requirements does not "initiat[e] a new collection of information." U.S. Br. 59-61. *Contra* State Br. 57.

### D. The DPPA permits the Attorney General's use.

The DPPA permits disclosure "[f]or use by any government agency . . . in carrying out its functions." 18 U.S.C. 2721(b)(1). The State argues that the United States has not explained how it will use the identifiers. State Br. 55; *see* Stavisky Br. 51-52. The State relies on *Senne v. Village of Palatine*, 695 F.3d 597, 606 (7th Cir. 2012) (en banc). But *Senne* requires only that disclosed information actually be used for the permitted purpose; it does not read "use" to mean "necessary use." *Id.* at

606-607 n.12. A requester's identified use need only fall within an exception. *See Gordon v. Softech Int'l, Inc.*, 726 F.3d 42, 51 (2d Cir. 2013) (disclosure proper where requester identified intended uses that "complied with exceptions in section 2721(b)"). Here, the use is straightforward. Identifiers distinguish one registrant from another with the same name; New York uses them for the same purpose. JA Vol. I at 97. And the Complaint alleges that the Attorney General needs them "[t]o prevent false positives in [his] review." JA Vol. I at 34.

**IV. This Court should reverse with instructions to order production.**

Defendants ask that any reversal be followed by discovery into the Attorney General's purpose. NAACP Br. 57-58; LWV Br. 17; Stavisky Br. 40 n.8. But Title III leaves no place for inquiry into the sufficiency of the Attorney General's statement of basis and purpose. *United States v. Clarke*, 573 U.S. 248 (2014), involved the IRS's summons power, which carries limits Title III lacks. *See* Part II.A, *supra*. And defendants have not made the substantial factual showing needed to justify further proceedings. *SEC v. Knopfler*, 658 F.2d 25, 26 (2d Cir. 1981) (per curiam). If the district court concludes that a protective order is appropriate, it may tailor its relief accordingly.

The Democratic Commissioners also oppose the United States' request that the mandate issue forthwith. Stavisky Br. 53. But Title III contemplates "prompt and expeditious inspection." *Kennedy v. Lynd*, 306 F.2d 222, 231 (5th Cir. 1962). The Court should issue its mandate forthwith or, alternatively, shorten the time for filing a petition for rehearing. *See* Fed. R. App. P. 2, 40(d)(1), 41(b).

## CONCLUSION

This Court should reverse the district court's judgment and remand with instructions to order the production of New York's unredacted SVRL.

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

s/ Michael T. Hayes
ANDREW G. BRANIFF
DAVID N. GOLDMAN
MICHAEL T. HAYES
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 805-7671
michael.hayes6@usdoj.gov

Date: October 23, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7) and Local Rule 32.1(a)(4)(B) because it contains 6,999 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Michael T. Hayes
MICHAEL T. HAYES
Attorney

Date: October 23, 2026