**Office of the New York State Attorney General**

**Letitia James**
**Attorney General**

November 11, 2026

Catherine O'Hagan Wolfe (via ACMS)
Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: *United States v. Bd. of Elections of the State of New York*, No. 26-2060

Dear Ms. Wolfe:

I represent defendant-appellee State of New York. I write pursuant to FRAP 28(j) to advise the Court of a decision in *United States v. Albence*, No. 25-cv-01543 (D. Del.), issued on November 10, 2026.

*Albence* is the counterpart to this lawsuit in Delaware. In the attached decision, the district court dismissed the lawsuit and denied the federal government's motion to compel production of Delaware's complete and unredacted state voter registration list (SVRL). The court reasoned that Delaware's SVRL is not a "record or paper" within the meaning of the Civil Rights Act of 1960, because state officials create it rather than "come into possession" of it. (Slip op. at 11-19.) This decision provides additional support for the State's argument (at pages 26-39 of its brief) that New York's SVRL is also not a "record or paper" under the Civil Rights Act of 1960.

The *Albence* decision also brings the total number of similar cases that have been decided against the federal government to 29.

Respectfully submitted,

Sarah L. Rosenbluth
Assistant Solicitor General
(716) 853-8407

cc: Counsel of record (via ACMS) // Enclosure

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY ALBENCE, in his official capacity as State Election Commissioner of the State of Delaware,<br><br>Defendant,<br><br>GEMMA LOWERY and BETHANY JENNINGS,<br><br>Intervenor-Defendants,<br><br>LATIN AMERICAN COMMUNITY CENTER, LA ESPERANZA, DELAWARE COALITION AGAINST DOMESTIC VIOLENCE, and JOSE MATTHEWS<br><br>Intervenor-Defendants. | Civil Action No. 25-1453-RGA |

MEMORANDUM OPINION

Harmeet K. Dhillon, Maureen S. Riordan, Eric V. Neff, Megan Frederick, Robert J. Keenan, Bessie Blackburn (argued), U.S. DEPARTMENT OF JUSTICE, Washington, D.C.,

Attorneys for Plaintiff.

Ian R. Liston, Emily V. Burton (argued), DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE,

Attorneys for Defendant.

Mark M. Billion, BILLION LAW, Rehoboth Beach, DE; Elisabeth C. Frost, Jacob D. Shelly, Kevin R. Kowalewski, James J. Pinchak (argued), ELIAS LAW GROUP, Washington, D.C.,

Attorneys for Intervenor-Defendants Bethany Jennings and Gemma Lowery.

Andrew Bernstein, AMERICAN CIVIL LIBERTIES UNION OF DELAWARE, Wilmington, DE; Theresa J. Lee, Jonathan Topaz, Sophia Lin Lakin, AMERICAN CIVIL LIBERTIES UNION

FOUNDATION, New York, NY; Patricia J. Yan (argued), AMERICAN CIVIL LIBERTIES UNION FOUNDATION, Washington, D.C.,

Attorneys for Intervenor-Defendants Latin American Community Center, La Esperanza, Delaware Coalition Against Domestic Violence, and Jose Matthews.

November 10, 2026

**ANDREWS, U.S. DISTRICT JUDGE:**

Before me are Plaintiff's Motion for Production of Records Demanded Pursuant to the Civil Rights Act of 1960 (D.I. 3) and Defendant and Intervenor-Defendants Motions to Dismiss (D.I. 33, 36, 39). I have considered the parties' briefing for the Motion for Production (D.I. 4, 35, 38, 56) and the Motions to Dismiss (D.I. 34, 37, 41, 57, 61, 62, 63), including submissions of supplemental authority related to the motions (D.I. 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 80, 81, 82, 83, 84, 85, 86, 91, 92, 95, 96, 101, 106, 107, 108, 110). I heard oral argument on September 29, 2026. For the following reasons, Defendant and Defendant Intervenors' Motions to Dismiss (D.I. 33, 36, 39) are GRANTED, and Plaintiff's Motion for Production of Records Demanded Pursuant to the Civil Rights Act of 1960 (D.I. 3) is DISMISSED AS MOOT.

## I. BACKGROUND

On July 11, 2025, the United States Department of Justice ("DOJ") sent a letter (the "July 11 letter") to Delaware Election Commissioner Anthony Albence regarding Delaware's compliance with the record keeping requirements under the National Voter Registration Act, 52 U.S.C. § 20501 ("NVRA") and the Help America Vote Act, 52 U.S.C. § 21083 ("HAVA"). (D.I. 4 at 8). DOJ requested for Delaware to respond to the July 11 letter with a list of information and documents, names of Delaware election officials responsible for maintaining the State's voter registration lists ("VRL"), a description of the State's steps for maintaining its VRL and complying with its federal record keeping requirements, and a current electronic copy of Delaware's statewide VRL. (*Id.* at 8–9; D.I. 4-1). On July 25, Commissioner Albence responded to DOJ's July 11 letter stating that the State would supply all information except for portions of the VRL that "are protected from disclosure under Delaware law" and that the NVRA did not require the production of. (D.I. 4-2). On August 14, 2025, citing Title III of the Civil Rights Act of 1960 ("Title III"),

DOJ sent a written demand (the "August 14 Demand") for "an electronic copy of Delaware's complete and current VRL." (D.I. 4-4 at 2). DOJ requested that the electronic copy of the VRL be produced within seven days (*id.* at 3) and "must contain all fields, including the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number" (*id.* at 1). On August 15, Commissioner Albence sent a letter in response (the "August 15 response") to DOJ's August 14 Demand. (D.I. 4-5). The August 15 response answers many of the questions DOJ posed in its July 11 letter (D.I. 4 at 10; *see* D.I. 4-5 at 1–8) but explained that the State would not provide the full VRL without further analysis of applicable authorities including those purporting to require the State to provide the information as well as federal and state privacy laws (D.I. 4-5 at 8–9). On September 16, Commissioner Albence sent a letter to DOJ refusing to provide the complete VRL because the August 14 demand "does not pose a valid request for information under the Civil Rights Act" and because federal and state laws prohibit the State from providing the complete VRL. (D.I. 4-5).

On December 2, 2025, DOJ filed a Complaint against Commissioner Albence alleging that he violated the Civil Rights Act of 1960, 52 U.S.C. § 20703 ("CRA"), by refusing to provide Delaware's full VRL as requested in DOJ's August 14 Demand. (D.I. 1 at ¶¶ 28–30). The Complaint relies upon the CRA's election related record keeping requirement and the NVRA and HAVA's requirements for managing VRLs. (*Id.* at ¶¶ 11–15). The action in this Court is one of the thirty lawsuits stemming from the DOJ's request for voter registration data from states and localities.[1]

[1] Twenty-seven of the nearly identical cases have been dismissed. *United States v. Henderson*, 2026 WL 3181405 (D. Utah Oct. 23, 2026); *United States v. Raffensperger*, 2026 WL 3002013 (N.D. Ga. Sept. 30, 2026); *United States v. Hanzas*, 2026 WL 2754349 (D. Vt. Sept. 17, 2026); *United States v. Hobbs*, 2026 WL 2833713 (W.D. Wash. Sept. 22, 2026); *United States v. Simon*, 2026 WL 2389778 (D. Minn. Aug. 17, 2026), *appeal docketed*, No. 26-2679 (8th Cir. Aug. 21,

Shortly after commencing the suit, DOJ filed a Motion for Production of Records Demanded Pursuant to the Civil Rights Act of 1960. (D.I. 3). Commissioner Albence filed a Motion to Dismiss DOJ's Complaint. (D.I. 33). After I granted two motions to intervene as defendants (D.I. 22, 27), Intervenor-Defendants Bethany Jennings and Gemma Lowery filed a Motion to Dismiss (D.I. 36) and Intervenor-Defendants Delaware Coalition Against Domestic Violence, La Esperanza, Latin American Community Center, and Jose Matthews filed a Motion to Dismiss (D.I. 39).

---

2026); *United States v. Aguilar*, 2026 WL 2364502 (D. Nev. Aug. 14, 2026), *appeal docketed*, No. 26-5375 (9th Cir. Aug. 20, 2026); *United States v. Evans*, 2026 WL 2267774 (D.D.C. Aug. 6, 2026), *appeal docketed*, No. 26-5296 (D.C. Cir. Aug. 19, 2026); *United States v. Griswold*, 2026 WL 2235374 (D. Colo. Aug. 3, 2026), *appeal docketed*, No. 26-1326 (10th Cir. Aug. 18, 2026); *United States v. Matthews*, __ F. Supp. 3d __, 2026 WL 2212877 (C.D. Ill. July 31, 2026), *appeal docketed*, No. 26-2695 (7th Cir. Aug. 17, 2026); *United States v. Adams*, 837 F. Supp. 3d 881 (E.D. Ky. July 23, 2026), *appeal docketed*, No. 26-5657 (6th Cir. July 24, 2026); *United States v. Thomas*, 2026 WL 2070437 (D. Conn. July 17, 2026), *appeal docketed*, No. 26-2064 (2d Cir. July 28, 2026); *United States v. Oliver*, 2026 WL 2031479 (D.N.M July 14, 2026), *appeal docketed*, No. 26-2126 (10th Cir. July 27, 2026); *United States v. Koski*, 2026 WL 2032532 (E.D. Va. July 14, 2026), *appeal docketed*, No. 26-2002 (4th Cir. July 29, 2026); *United States v. Warner*, 840 F. Supp. 3d 446 (S.D.W. Va. July 13, 2026), *appeal docketed*, No. 26-2262 (4th Cir. Sept. 15, 2026); *United States v. Bd. of Elec. of the State of N.Y.*, 2026 WL 1999921 (N.D.N.Y. July 10, 2026), *appeal docketed*, No. 26-2060 (2d Cir. July 28, 2026); *United States v. Caldwell*, 2026 WL 2186515 (D.N.J. June 29, 2026), *appeal docketed*, No. 26-3085 (3d Cir. Aug. 20, 2026); *United States v. Scanlan*, 838 F. Supp. 3d 150 (D.N.H. 2026), *appeal docketed*, No. 26-1783 (1st Cir. July 7, 2026); *United States v. Schmidt*, 835 F. Supp. 3d 697 (W.D. Pa. 2026), *appeal docketed*, No. 26-2684 (3d Cir. July 7, 2026); *United States v. DeMarinis*, 2026 WL 1780586 (D. Md. June 18, 2026), *appeal docketed*, No. 26-1878 (4th Cir. July 13, 2026); *United States v. Bellows*, 834 F. Supp. 3d 113 (D. Me. 2026), *appeal docketed*, No. 26-1676 (1st Cir. June 15, 2026); *United States v. Wis. Elections Comm'n*, 833 F. Supp. 3d 949 (W.D. Wis. 2026), *appeal docketed*, No. 26-2217 (7th Cir. June 5, 2026); *United States v. Fontes*, 832 F. Supp. 3d 944 (D. Ariz. 2026), *appeal docketed*, No. 26-3609 (9th Cir. June 4, 2026); *United States v. Amore*, 831 F. Supp. 3d 149 (D.R.I. 2026), *appeal docketed*, No. 26-1665 (1st Cir. June 9, 2026); *United States v. Galvin*, 830 F. Supp. 3d 122 (D. Mass 2026), *appeal docketed*, No. 26-1657 (1st Cir. June 9, 2026); *United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026), *aff'd* 179 F.4th 470 (2026); *United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Or. 2026), *appeal argued*, No. 26-1231 (9th Cir. May 19, 2026); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026), *appeal argued*, No. 26-1232 (9th Cir. May 19, 2026). Two other cases remain pending. *United States v. Nago*, No. 25-522 (D. Haw. filed July 7, 2026); *United States v. McGrance*, No. 26-197 (D. Idaho filed Apr. 1, 2026).

## II. LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (internal citation omitted). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)).

### B. Statutory Regulations on States' Administration of Elections

"Through the Elections Clause, the Constitution delegated to the States the power to regulate the 'Times, Places and Manner of holding Elections for Senators and Representatives.'" *Cook v. Gralike*, 531 U.S. 510, 522 (2001) (quoting U.S. CONST. art. I, § 4, cl.

1). This delegation provides "States 'broad power' to prescribe the procedural mechanisms for holding congressional elections." *Id.* at 235 (quoting *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986)). The Elections Clause also "empowers Congress to 'make or alter' state election regulations." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013) (citing U.S. CONST. art. I, § 4, cl. 1). "By 'default,' however, 'responsibility for the mechanics of congressional elections' belongs to States." *Watson v. Republican Nat'l Comm.*, 609 U.S. 672, 677 (2026) (quoting *Foster v. Love*, 522 U.S. 67, 69 (1997)). Regulations enacted by Congress under the Election Clause "supersede those of the State which are inconsistent therewith," but only "so far as [Congress's power under the Election Clause] is exercised, and no farther." *Inter Tribal Council of Ariz.*, 570 U.S. at 9 (internal quotation omitted).

There are three federal election statutes relevant to the current dispute.

**1. Title III of the Civil Rights Act of 1960**

"One of the many techniques used to keep Black voters from the polls was to reject would-be registrants for insignificant, hyper-technical errors in filling out application forms. . . . Voter registration thus was the principal means to suppress Black voter participation." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 126 (3d Cir. 2024), *cert. den.* 145 S.Ct. 1125 (2025). "In response to de jure discrimination against black voters in the South," Congress enacted the Civil Rights Acts of 1957 and 1960. *United States v. Benson*, 179 F.4th 470, 475–76 (6th Cir. 2026), *reh'g denied*, 187 F.4th 462 (Aug. 14, 2026); *see Pa. State Conf. of NAACP Branches*, 97 F.4th at 126. In light of "the voting rights of Black citizens [being] frustrated by state officials' destruction of voter registration applications," Title III included a record keeping requirement for state election officials. *Benson*, 819 F. Supp. 3d at 769; *see Evans*, 2026 WL 2267774, at *9–10.

Title III requires that state election officers retain, "for a period of twenty-two months from the date of any [federal] election . . . , all records and papers which come into [the official's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. The CRA authorizes criminal penalties for "[a]ny person . . . who willfully steals, destroys, conceals, mutilates, or alters any record or paper required by section 20701 of this title to be retained and preserved." *Id.* § 20702.

To provide the federal government a mechanism for oversight and enforcement of the CRA, records and papers subject to the Title III's record keeping requirement must be "made available for inspection, reproduction, and copying" by the Attorney General if the Attorney General makes a "demand in writing" that specifies "the basis and purpose" for the inspection. *Id.* § 20703. Should a dispute result from such a demand, the "United States district court for the district in which a demand is made pursuant to section 20703 . . . , or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. § 20705.

**2. The National Voter Registration Act**

In 1993, Congress enacted the NVRA with "four main goals: (1) increasing the number of registered voters, (2) increasing participation in federal elections, (3) maintaining current and accurate voter rolls, and (4) ensuring the integrity of the voting process." *Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 178 (3d Cir. 2017) (citing 52 U.S.C. § 20501). These goals relate to "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018).

Corresponding with the two main objectives, the NVRA contains a set of instructions for states that "both protects registered voters from improper removal from the rolls and places limited

requirements on states to remove ineligible voters from the rolls." *Am. C.R. Union*, 872 F.3d at 179. Generally, the NVRA "requires States to provide simplified systems for registering to vote in federal elections," *Inter Tribal Council of Ariz.*, 570 U.S. at 5 (citation and emphasis omitted), and to "'conduct a general program that makes a reasonable effort to remove the names' of voters who are ineligible 'by reason of' death or change in residence[,]" *Husted*, 584 U.S. at 761 (quoting 52 U.S.C. § 20507(a)(4)).

"To ensure compliance, the NVRA contains a public-disclosure provision requiring States to 'maintain for at least 2 years and . . . make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'" *Benson*, 179 F.4th at 476. The Attorney General, as well as private individuals, may bring civil actions "in an appropriate district court for declaratory or injunctive relief" to enforce the NVRA. 52 U.S.C. § 20510(a)–(b).

**3. The Help America Vote Act**

"The HAVA was enacted in 2002 to help improve the equipment used to cast votes, the way registration lists are maintained, and how polling operations are conducted." *Am. C.R. Union*, 872 F.3d at 181. "[T]he HAVA builds on the NVRA by requiring that each state maintains a computerized database for voter registrations," *id.* at 181–82, with the computerized VRL containing each voter's name, registration information, and a unique identifier. 52 U.S.C. § 21083(a)(1)(A).

The HAVA contains various VRL maintenance requirements that states must follow. Many of these requirements are aimed at "ensur[ing] that voter registration records . . . are accurate and are updated regularly." *Id.* § 21083(a)(4). The HAVA further requires that states "provide adequate technological security measures to prevent the unauthorized access to the computerized

list." *Id.* § 21083(a)(3). "Unlike the NVRA, however, the HAVA does not include a private right of action that allows aggrieved parties to sue nonconforming states. Subchapter IV of the HAVA includes only two mechanisms for enforcement: (1) a civil action brought by the Attorney General, and (2) administrative complaint." *Am. C.R. Union*, 872 F.3d at 182 (internal citation omitted).

## III. DISCUSSION

### A. Applicability of Federal Rules to Title III of the CRA

DOJ argues that it is entitled to a "special proceeding that is summary in nature and neither plenary nor adversary." (D.I. 4 at 7 (cleaned up); *see id.* at 15–16). The Federal Rules of Civil Procedure, DOJ argues, do not apply to a special proceeding to compel documents requested under Title III. (D.I. 57 at 1–6). Accordingly, DOJ argues that Defendants cannot seek discovery or bring a motion to dismiss. (D.I. 56 at 8; D.I. 57 at 5–6). Commissioner Albence argues that the Federal Rules apply to this proceeding, that a motion to dismiss can be brought, and, if his motion to dismiss is not granted in full, the parties should have the opportunity to develop the record before I rule on DOJ's motion to compel.[2] (D.I. 35 at 16–20).

The Federal Rules of Civil Procedure "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings." FED. R. CIV. P. 81(a)(5). The Supreme Court held that when a statute authorizes courts to compel compliance but does not contain a "provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply."[3] *United*

---

[2] Defendant-Intervenors make similar arguments. (D.I. 38 at 5–15; D.I. 41 at 16–20).

[3] DOJ argues that the Fifth Circuit case *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962), requires that a request for documents under Title III of the CRA be treated as a special proceeding

*States v. Powell*, 389 U.S. 48, 58 n.18 (1964); *see also United States ex rel. Polansky v. Exec. Health Res.*, 599 U.S. 419, 436 (2023) ("The Federal Rules are the default rules in civil litigation, and nothing warrants a departure from them here."). There is no provision in Title III that precludes using the Federal Rules of Civil Procedure in this action.[4] Thus, the Federal Rules of Civil Procedure apply to this proceeding, and I will consider Defendants' motions to dismiss alongside DOJ's motion to compel production.

**B. Does Delaware's VRL "Come into [Commissioner Albence's] Possession"?**

DOJ argues that Title III applies to "self-generated" VRLs that were created from compiled documents submitted as part of voter registration applications. (D.I. 57 at 11–15). Intervenor-

---

that is limited in nature. (D.I. 4 at 6–8; D.I. 56 at 1–6; D.I. 57 at 5–10). *Lynd* was decided two years before the Supreme Court's ruling in *United States v. Powell*, 389 U.S. 48 (1964). I agree with the other district courts that have found *Lynd* does not preclude the use of the Federal Rules. *Henderson*, 2026 WL 3181405, at *5; *Raffensperger*, 2026 WL 3002013, at *3–4; *Hanzas*, 2026 WL 2754349, at *2–3; *Simon*, 2026 WL 2389778, at *7–8; *Aguilar*, 2026 WL 2364502, at *2–3; *Evans*, 2026 WL 2267774, at *4;. *Griswold*, 2026 WL 2235374, at *3; *Oliver*, 2026 WL 2031479, at *7 n.17; *Koski*, 2026 WL 2032532, at *1 n.2; *Warner*, 840 F. Supp. 3d at 449; *Bd. of Elec. of the State of N.Y.*, 2026 WL 1999921, at *6–7; *DeMarinis*, 2026 WL 1780586, at *3; *Bellows*, 834 F. Supp. 3d at 121–22; *Amore*, 831 F. Supp. 3d at 155; *Oregon*, 828 F. Supp. 3d at 1102–03; *Weber*, 816 F. Supp. 3d at 1182.

Even if *Lynd* did apply to motions for records under Title III, I agree with the other district courts that have determined that the analysis of the issues would not change in this case because DOJ filed a traditional civil complaint and based its motion on statutes outside of the CRA. *Raffensperger*, 2026 WL 3002013, at *4; *Hobbs*, 2026 WL 2833713, at *3 n.6; *Hanzas*, 2026 WL 2754349, at *3; *Adams*, 837 F. Supp. 3d at 886; *Wis. Elections Comm'n*, 833 F. Supp. 3d at 953; *Scanlan*, 838 F. Supp. 3d at 153 n.2.

[4] *See Henderson*, 2026 WL 3181405, at *5; *Raffensperger*, 2026 WL 3002013, at *4; *Hanzas*, 2026 WL 2754349, at *3; *Hobbs*, 2026 WL 2833713, at *3 n.6; *Simon*, 2026 WL 2389778, at *8; *Aguilar*, 2026 WL 2364502, at *2; *Evans*, 2026 WL 2267774, at *4; *Griswold*, 2026 WL 2235374, at *3; *Matthews*, __ F. Supp. 3d __, 2026 WL 2212877, at *2; *Adams*, 837 F. Supp. 3d at 885–86; *Oliver*, 2026 WL 2031479, at *7; *Koski*, 2026 WL 2032532, at *1 n.2; *Warner*, 840 F. Supp. 3d at 449; *Bd. of Elec. of the State of N.Y.*, 2026 WL 1999921, at *6; *Caldwell*, 2026 WL 2186515, at *5; *DeMarinis*, 2026 WL 1780586, at *3; *Bellows*, 834 F. Supp. 3d at 121–22; *Oregon*, 828 F. Supp. 3d at 1102–03; *Weber*, 816 F. Supp. 3d at 1182; *see also Fontes*, 832 F. Supp. 3d at 947 n.1 (stating the Federal Rules apply); *Amore*, 831 F. Supp. 3d at 155 (same); *United States v. Benson*, 819 F. Supp. 3d 753, 758–59 (W.D. Mich. 2026) (same).

Defendants Delaware Coalition Against Domestic Violence, La Esperanza, Latin American Community Center, and Jose Matthews responded by arguing that DOJ's Demand "fails as a matter of law" because it "fall[s] outside the scope of Title III." (D.I. 62 at 8).

At oral argument, Commissioner Albence explained that Delaware maintains one centralized VRL. (D.I. 109 at 21:12–13). The VRL contains data from voter registration applications, the DMV, and the Department of Vital Statistics, along with copies of voter registration applications, notes entered by Delaware elections officers, and a unique voter identification that the State generates for each voter. (*Id.* at 21:13–22:13). Rejected voter registration applications are not included in Delaware's VRL. (*Id.* at 34:9–14). Delaware continuously updates its VRL as the State receives information from voters and government entities. (*Id.* at 22:13–15, 24:18–21). Rather than deleting information from the VRL when updates are received, Delaware adds the new information to the VRL with a note indicating the change. (*Id.* at 22:22–23:9).

The demand provision of Title III enables the Attorney General to inspect, reproduce, or copy "[a]ny record or paper required by section 20701 of this title to be retained." 52 U.S.C. § 20703. Section 20701 provides that:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any [federal election] *all records and papers which come into his possession* relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election . . . .

52 U.S.C. § 20701 (emphasis added). Defendants do not dispute the Government's assertion that Delaware's VRL is a "record" related to "any application, registration, payment of poll tax, or

other act requisite to voting." *Id.*[5] Thus, the question is whether Delaware's VRL is a record that "c[a]me into [Commissioner Albence's] possession." *Id.*

In *Benson*, the Sixth Circuit explained that Michigan's VRL was not a record under Title III because "[n]othing in Title III allows the government to obtain something that the secretary of state created and established." *Benson*, 179 F.4th at 481. Twenty district courts have similarly concluded that VRLs created by state officials from voter registration applications do not qualify as a record under Title III.[6] I agree with the Sixth Circuit and other district courts that have determined VRLs created by state elections officials, such as Delaware's VRL, are not records that Title III authorizes the Attorney General to request.

Title III does not define "come into his possession." *See Benson*, 179 F.4th at 478. When a statute does not define a phrase, "we look to the plain meaning of this phrase's component words . . . [a]nd, we read these words in their context and with a view to their place in the overall statutory

[5] Defendants did not affirmatively agree that Delaware's VRL is a record under Title III. They simply did not contest it. I note that, "considering that the existence of a computerized voter list would not have been foreseeable to Congress in the 1960s," *Koski*, 2026 WL 2032532, at *6, there is room for argument about whether the VRL as a whole is a record within the meaning of Title III. As explained at oral argument, Delaware's VRL is a computerized database that is constantly updated as data is received from individuals and state agencies. (D.I. 109 at 21:12–24:9). *See Benson*, 179 F.4th at 481 (explaining that Michigan's VRL "contains information from diverse sources, many of which have nothing to do with 'act[s] requisite to voting.'" (quoting 52 U.S.C. § 20701)); *United States v. Wis. Elections Comm'n*, 833 F. Supp. 3d at 955 ("[V]oter registration lists are not necessarily simple compilations of voter registration applications. Some contain additional information that Congress may very well have wanted to exempt from production: for example . . . information about individuals' voting histories").

[6] *See Henderson*, 2026 WL 3181405, at *7–8; *Hanzas*, 2026 WL 2754349, at *4–5; *Hobbs*, 2026 WL 2833713, at *4–5; *Simon*, 2026 WL 2389778, at *8–11; *Aguilar*, 2026 WL 2364502, at *4–5; *Evans*, 2026 WL 2267774, at *6–7; *Griswold*, 2026 WL 2235374, at *5; *Matthews*, __ F. Supp. 3d __, 2026 WL 2212877, at *3–4; *Adams*, 837 F. Supp. 3d at 886–87; *Thomas*, 2026 WL 2070437, at *5–6; *Koski*, 2026 WL 2032532, at *4–5; *Bd. of Elec. of the State of N.Y.*, 2026 WL 1999921, at *9; *Caldwell*, 2026 WL 2186515, at *7; *Scanlan*, 838 F. Supp. 3d at 155–59; *Schmidt*, 835 F. Supp. 3d at 699; *DeMarinis*, 2026 WL 1780586, at *4–5; *Bellows*, 834 F. Supp. 3d at 123; *Wis. Elections Comm'n*, 833 F. Supp. 3d at 954; *Fontes*, 832 F. Supp. 3d at 949–51; *Benson*, 819 F. Supp. 3d at 768–70.

scheme." *EPA v. Calumet Shreveport Refining, L.L.C.*, 605 U.S. 627, 643 (2025) (internal quotation omitted). As the Sixth Circuit explained in *Benson*, "[a]round the time that Congress enacted Title III," the term "come into . . . possession" "meant to 'acquire,' 'obtain,' or 'receive.'" *Benson*, 179 F.4th at 478 (citing *Honeycutt v. United States*, 581 U.S. 443, 449 (2017); *Come into*, *Webster's Third New International Dictionary* 452 (1966) ("to enter upon or in possession of: acquire esp. as an inheritance"); *Acquire*, *Webster's Third New International Dictionary* 18 (1961) ("to come into possession, control, or power of disposal of"); *Obtain*, 7 *Oxford English Dictionary* 37 (1933) ("to come into the possession or enjoyment of (something)"); *Receive*, *Webster's Third New International Dictionary* 1894 (1961) ("to come into possession of: acquire")). "An ordinary English speaker would not say that [Commissioner Albence] has come into possession of something that [he] created, established, and maintained. Thus, [Delaware's VRL] did not 'come into [Commissioner Albence's] possession' as that term is ordinarily understood." *Id.* at 479. I agree that the plain meaning of "come into his possession" does not apply to internally created records. As further support, this interpretation of "come into his possession" is consistent with use in everyday language[7] and Congress's use in other statutes.[8]

---

[7] *See Benson*, 179 F.4th at 479 ("A baker may purchase ingredients from a grocery store (flour, eggs, etc.) and then proceed to bake [cakes]. It would be rather strange to say that the baker has 'come into' possession of the cakes after pulling them out of the oven."); *Evans*, 2026 WL 2267774, at *6 ("the Mona Lisa 'came into the possession' of the Louvre around 1797; one would not say that the painting 'came into the possession" of Leonardo da Vinci when he completed it around 1517.").

[8] When analyzing "come into possession" as used in Title III, the Western District of Michigan explained that interpreting the term as applying to someone "acquir[ing] an item from an external source" is consistent with Congress's use of the term generally because:

> Congress frequently uses the phrase "come into possession" to refer to items that a person *obtains* rather than *creates*. *See, e.g.*, 18 U.S.C. § 1703(a) (prohibiting postal employees from destroying letters that "come into [their] possession"); 50 U.S.C. § 217 (requiring soldiers to report when abandoned property "comes into [their] possession"); 13 U.S.C. § 214 (prohibiting census takers from disclosing information that "comes into [their] possession"); 18 U.S.C. § 654 (prohibiting

As explained in *Benson*, DOJ's proposed reading of the statute would create conflict between Title III, the NVRA, and the HAVA because "Title III tells election officials to retain and preserve certain records and papers that come into their possession, and the NVRA and HAVA tell election officials to remove ineligible voters from statewide voter registration lists." *Benson*, 179 F.4th at 480. "It is this Court's duty to interpret Congress's statutes as a harmonious whole rather than at war with one another." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018); *see also Jones v. Hendrix*, 599 U.S. 465, 478 (2023) ("Basic principles of statutory interpretation require that we construe [statutory provisions] in harmony, not set them at cross-purposes."). I agree with the Sixth Circuit and other district courts that have determined that reading the demand provision of Title III to apply to documents received from third-party sources, rather than internally created documents, prevents conflict between Title III, the NVRA, and the HAVA.[9] Since there is a

---

embezzlement of property that "comes into [one's] possession"); 46 U.S.C. § 10705 (describing process to follow "[w]hen money, property, or wages of a deceased seaman comes into possession of a consular officer"); 44 U.S.C. § 3572 (imposing limits on federal employees' use of confidential information that they "come[ ] into possession of"). Indeed, at least one federal statute draws an explicit distinction between possessing something and having something come into one's possession. *See* 8 U.S.C. § 1454 ("If the certificate or declaration has been lost, the applicant or any other person who *shall have, or may come into possession of it* is required to surrender it . . . ." (emphasis added)). Here, Congress could have referred simply to "records in the possession of" election officials, or even just "records" without any qualifier, which is the language used in the NVRA, *see* 52 U.S.C. § 20507(i)(1).

*Benson*, 819 F. Supp. 3d at 768; *see also Scanlan*, 838 F. Supp. 3d 158 (analyzing the "come into possession" portion of 8 U.S.C. § 1445(a)).

[9] *Benson*, 179 F.4th at 480; *Henderson*, 2026 WL 3181405, at *8; *Hanzas*, 2026 WL 2754349, at *5; *Hobbs*, 2026 WL 2833713, at *5; *Simon*, 2026 WL 2389778, at *9–10; *Aguilar*, 2026 WL 2364502, at *5; *Evans*, 2026 WL 2267774, at *7; *Griswold*, 2026 WL 2235374, at *4; *Matthews*, __ F. Supp. 3d __, 2026 WL 2212877, at *4; *Adams*, 837 F. Supp. 3d at 887; *Thomas*, 2026 WL 2070437, at *6; *Koski*, 2026 WL 2032532, at *5; *Bd. of Elec. of the State of N.Y.*, 2026 WL 1999921, at *9; *Caldwell*, 2026 WL 2186515, at *8; *Scanlan*, 838 F. Supp. 3d at 157; *DeMarinis*, 2026 WL 1780586, at *5; *Wis. Elections Comm'n*, 833 F. Supp. 3d at 955; *Fontes*, 832 F. Supp. 3d at 953.

reading of Title III that prevents conflict with the NVRA and the HAVA, "[w]e should not adopt a reading that would place election officials in violation of one federal law for trying to comply with others." *Benson*, 179 F.4th at 480.

Applying the demand provision to documents created by election officers, as DOJ proposes, "would render 'come into' superfluous." *Benson*, 179 F.4th at 480. DOJ's interpretation violates the principle that "courts must give effect, if possible, to every clause and word of a statute." *Loughrin v. United States*, 573 U.S. 351 (2014) (internal quotations omitted); *see Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 53 (2024) ("Proper respect for Congress cautions courts against lightly assuming that any of the statutory terms it has chosen to employ are 'superfluous' or 'void' of significance."). On the other hand, interpreting the demand provision to apply to documents received from third-party sources provides meaning to the phrase "come into his possession."

DOJ argues that Sections 20701 and 20703 focus on the responsibilities of individual election officers, and therefore, Commissioner Albence came into possession of Delaware's already existing VRL when he assumed his current role as State Election Commissioner of Delaware. (D.I. 57 at 14–15). I do not find DOJ's argument convincing. A similar factual background occurred in *Benson* where "Michigan officials created [the state's VRL] themselves." *Benson*, 179 F.4th at 478–79. Despite other election officers creating the list, the Sixth Circuit rejected DOJ's argument, determining that Michigan's VRL did not "come into [the Michigan Secretary of State's] possession" because she "did not acquire, obtain, or receive the [VRL] from a third party." *Id.* at 478.[10]

[10] I think the statutory analysis is difficult in this case because DOJ is trying to fit a square peg into a round hole. Title III was passed in 1960. The "records" that existed at the time were paper records. The registration applications (and poll tax receipts) were given to local officials, who

DOJ argues that it must be able to access "both applications to register to vote and the final voting rolls, including the electronic []VRL" in order to ensure compliance with Title III, the NVRA, and the HAVA. (D.I. 57 at 15). I do not need to decide whether access to unredacted VRLs is necessary to access compliance with federal voting statutes such as the NVRA and the HAVA. The demand provision of Title III is designed to monitor and enforce the CRA; "nothing supports [DOJ's] supposition that Congress intended Title III to be a freewheeling source of authority for the Attorney General to investigate any violation of federal election law." *Evans*, 2026 WL 2267774, at *8. Nor do I need to decide whether DOJ needs access to unredacted VRLs to monitor for compliance with Title III specifically. The courts cannot "rewrite the statutory scheme in order to approximate what we think Congress might have wanted . . . . If that effort is to be made, it should be made by Congress, and not by the federal courts." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 76 (1996); *see also Evans*, 2026 WL 2267774, at *10 ("If the Department

---

might have passed them on to state officials if required by law to do so. Title III required election officials to "retain and preserve" the records, which are verbs one might naturally use to discuss the keeping of paper records in an unchanged state. Section 20701 refers to records being "delivered" to other election officers, or being "deposited" with state-designated custodians. These verbs too make sense when used for paper records. I think "come into his possession" likewise refers to paper records. In contrast, NRVA and HAVA are not concerned with paper records. They are concerned with electronic databases. Registration applications (poll taxes having gone the way of the dodo bird) are now stored electronically. Electronic voter databases are constantly being changed, which seems inconsistent with a requirement to retain and preserve them. It seems unlikely that election officers are "delivering" the electronic databases to other election officers.

It seems worth noting that DOJ would have a better case for seeking actual registration applications. *See Benson*, 187 F.4th at 465–66 (Murphy, J., concurring on denial of rehearing); *Benson*, 819 F. Supp. 3d at 769. The VRL, including "voter names, addresses, political party affiliations, voting history, legislative district information, and years of birth" is publicly available. 15 Del. Code §§ 304, 1305; *see also Evans*, 2026 WL 2267774, at *10 & n.10. The point being that to the extent DOJ wants to determine whether the VRL contains ineligible voters, it has the tools to accomplish that end.

disagrees with Congress's judgment as to the records necessary to carry out its enforcement duties under either HAVA or the NVRA, it needs to lodge that objection with Congress."). Thus, "the government's contention that our interpretation would 'paralyze the United States' ability to enforce various federal voting laws' is unpersuasive" as a matter of statutory interpretation. *Benson*, 179 F.4th at 482; *see Simon*, 2026 WL 2389778, at *11 (rejecting the argument that Title III must be interpreted according to DOJ's proposal to avoid "undermin[ing] [Title III's] purpose").

Last, DOJ argues that it "previously has pursued successful matters, including in litigation, to obtain statewide voter registration lists under Title III of the CRA." (D.I. 57 at 15). In support of this argument, DOJ cites a memorandum of understanding from a 2008 Texas matter granting access to Texas' VRL (D.I. 58-1), a consent decree in a 2006 Georgia case granting access to Georgia's VRL (D.I. 58-3 (*United States v. Georgia*, 1:06-cv-02442 (N.D. Ga. Oct. 12, 2006), D.I. 4), and a May 12, 2026, opinion by DOJ's Office of Legal Counsel ("OLC") concluding that Title III authorizes the Attorney General to compel states to produce full VRLs (D.I. 74). A memorandum of understanding and a consent decree are unpersuasive. "The fact that other states agreed to provide their voter registration lists is irrelevant to a statutory interpretation of Section 20701." *Aguilar*, 2026 WL 2364502, at *5; *see Bd. of Elec. of the State of N.Y.*, 2026 WL 1999921, at *10. Likewise, I do not find OLC's opinion helpful. The Supreme Court has "recognized from the outset . . . that exercising independent judgment often included according due respect to Executive Branch interpretations of federal statutes," with the respect "especially warranted when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385–86 (2024). However, as the Sixth Circuit explained, OLC's opinion is "not contemporaneous with

the passage of Title III," has not been show to "adhere[] to some earlier Executive Branch interpretations of Title III," and "conflicts with the plain language of Title III." *Benson*, 179 F.4th at 482; *see also Bd. of Elec. of the State of N.Y.*, 2026 WL 1999921, at *10 (finding OLC's opinion unpersuasive); *DeMarinis*, 2026 WL 1780586, at *5 (same).

For the reasons explained above, Delaware's VRL is not a record that came into Commissioner Albence's possession. Therefore, Title III does not provide the grounds for DOJ to demand production of Delaware's VRL.[11]

## IV. CONCLUSION

For the reasons explained above, Commissioner Albence's and Intervenor-Defendants' Motions to Dismiss (D.I. 33, 36, 39) are GRANTED and DOJ's Motion for Production of Records Demanded Pursuant to the Civil Rights Act of 1960 (D.I. 3) is DISMISSED AS MOOT.

An appropriate order will issue.

[11] Commissioner Albence and Intervenor-Defendants raise a number of additional arguments including defects with the basis and purpose in DOJ's Demand (D.I. 34 at 12–15; D.I. 37 at 7–13; D.I. 41 at 9–14), the time Delaware's VRL was created in relation to the last federal election (D.I. 34 at 15–16), the form that documents must be produced in under Title III (*id.* at 16–17; D.I. 41 at 14–16), and the interaction of various federal and state privacy laws with Title III (D.I. 34 at 17–20; D.I. 37 at 13–20). I do not analyze these arguments because they are moot after determining that Delaware's VRL is not a record that can be requested under Title III.